**KLESTADT & WINTERS, LLP**

570 Seventh Avenue, 17th Floor
New York, NY 10018
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Sean C. Southard
Brendan M. Scott

*Counsel to the Official Committee*
*of Unsecured Creditors*

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

-------------------------------------------------------------------x

| | |
|---|---|
| IN THE MATTER OF:         : | |
| : | Chapter 11 |
| BARE FEET SHOES OF PA, INC., et al,  : | |
| : | Case No. 11-19292 (ELF) |
| Debtors.   : | (Jointly Administered) |

-------------------------------------------------------------------x

| | |
|---|---|
| THE OFFICIAL COMMITTEE OF UNSECURED  : | |
| CREDITORS,    : | |
| : | |
| Plaintiff,  : | |
| : | Adv. Pro. No. 13-00589 (ELF) |
| -against-   : | |
| : | |
| URI JACOBSON, MEIR DUKE, D&J HOLDINGS  : | |
| & INVESTMENTS, MAX SHOES, LLC, GREEN  : | |
| GUACAMOLE, LLC,  BARE FEET SHOES OF  : | |
| FLORIDA, INC. d/b/a BARE FEET OF FLORIDA,  : | |
| INC. d/b/a BARE FEET SHOES OF FLORIDA, and  : | |
| NEW JERSEY BARE FEET SHOES, INC.,  : | |
| : | |
| : | |
| : | |
| : | |
| Defendants.  : | |

-------------------------------------------------------------------x

## SECOND AMENDED COMPLAINT

The Official Committee of Unsecured Creditors, the plaintiff in the above-referenced

adversary proceeding (the "<u>Plaintiff</u>" or "<u>Committee</u>"), by and through its attorneys, Klestadt &

Winters, LLP, as and for its first amended complaint (the "Complaint") against Uri Jacobson,

Meir Duke, D&J Holdings & Investments, Max Shoes, LLC, Green Guacamole, LLC, Bare Feet

Shoes of Florida, Inc. d/b/a Bare Feet of Florida, Inc. d/b/a Bare Feet Shoes of Florida, and New

Jersey Bare Feet Shoes, Inc., (the "Defendants"), respectfully alleges as follows:

### PRELIMINARY STATEMENT

This Complaint seeks recovery from the Defendants, each of whom at all relevant times

has been an insider of the Debtors, and each of whom at all relevant times, was owned, operated

and controlled by Uri Jacobson and/or Meir Duke, arising from the Debtors' transfers to each of

the Defendants. The transfers in question were a series of informal and improper money

transfers between the Debtors, their owners and certain third parties owned, operated and/or

controlled by the Debtors' owners, all of which ultimately benefitted the Debtors' owners to the

detriment of the Debtors' legitimate creditors.

### BACKGROUND

1. On December 6, 2011 (the "Petition Date"), Bare Feet Shoes of P.A., Inc.,

Bare Feet Shoes & Accessories, LLC, BFSD, Inc., and Shore Bare Feet Shoes, Inc. (the

"Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United

States Code (the "Bankruptcy Code"). The Debtors' cases are being jointly administered.

2. On March 30, 2012, the Office of the United States Trustee appointed the

Committee, which consists of the following five (5) members: (i) Ocean Fashion, Ltd., (ii)

SMAC, Inc., (iii) SHM Shoes, LLC, (iv) Mirage Fashion of New York, LLC, and (v) DASA

Brands, Inc. [Docket No. 108].

3. On July 27, 2012, the United States Trustee (the "UST") moved to appoint

an examiner or, alternatively, convert this chapter 11 case into a chapter 7 case [DE 195]. By

2

order dated August 8, 2012, this Court granted the motion to the extent of appointing an examiner [DE 220] and on August 9, 2012, further granted the UST's motion to appoint George L. Miller (the "Examiner") as the examiner [DE 225].

4.      On October 2, 2012, the Examiner submitted his report (the "Report") [DE 295] which describes in detail the wrongdoing perpetrated by current and former insiders of the Debtors before and following the Petition Date.

5.      On February 27, 2013, the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Court") entered an order substantively consolidating the estates of the Debtors into a single estate.

6.      On March 8, 2013, this Court entered an order (the "Confirmation Order") confirming the Debtors' Second Amended Plan of Reorganization (the "Plan").

7.      Pursuant to the Plan and Confirmation Order, the Committee is authorized and empowered to pursue, avoid, and recover (i) all avoidance actions, and (ii) any and all claims or rights of recovery of any kind against current or former insiders, as well as any entities related to current or former insiders (together, the "Committee Actions").  These claims include claims for repayment of funds due the Debtors from Uri Jacobson, Meir Duke, and related entities, as well as claims to recapture fraudulent conveyances and preferential payments to creditors which were received pursuant to 11 U.S.C. §§ 547–48.

## JURISDICTION AND PARTIES

8.      This adversary proceeding is brought pursuant to the Plan and Confirmation Order, sections 502, 544, 548, 550, and 551 of the Bankruptcy Code; Part VII of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and Bankruptcy Rule 3007.

9.     The Bankruptcy Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.

10.     This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (H), and (O).

11.     Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

12.     Upon information and belief, the following is a list of Defendants who, as insiders or Related Entities (as defined below), received pre-petition transfers from the Debtors (the "Pre-Petition Transferees"):

a)     Defendant Uri Jacobson ("Jacobson") is an individual with an address located at 1000 Easton Rd., Suite 105, Wyncote, PA 19095.   Jacobson currently holds a 100% ownership interest in the Debtors and previously held a 49% ownership interest in the Debtors.

b)     Defendant Meir Duke ("Duke") is an individual with an address located at 12300 Highgrove Ct., Reistertown, MD 21136.  Duke formerly held a 51% ownership interest in the Debtors.

c)     Defendant D&J Holdings & Investments ("D&J") is a partnership, which maintains an address located at 7 Gwynns Mill Ct., Owings Mills, MD 21117.  Together, Jacobson and Duke hold 100% of the ownership interests in D&J.

d)     Defendant Max Shoes LLC ("Max") is a limited liability company which maintains an address located at 7-C Gwyns Mill Court, Owings Mill, MD 21117.  Duke holds a 100% ownership interest in Max.

4

e) Defendant Green Guacamole LLC "("Green Guacamole") is a limited liability company which maintains an address located at 1000 Easton Road, Suite 108, Wyncote, PA 19095.   Jacobson holds a 100% ownership interest in Green Guacamole.

f) Defendant Bare Feet Shoes of Florida, Inc. d/b/a Bare Feet of Florida, Inc. d/b/a Bare Feet Shoes of Florida ("BFS of Florida") is a business entity which maintains an address located at 18361 N.W. 27th Avenue, Miami, FL 33056.  Duke holds a 100% ownership interest in BFS of Florida.

g) Defendant New Jersey Bare Feet Shoes, Inc. ("New Jersey Bare Feet Shoes" and collectively with D&J, Max, Green Guacamole, and BFS of Florida, the "Related Entities", and each separately a "Related Entity") is a corporation which maintains an address located at 1040 Kings Highway, Suite 200, Cherry Hill, NJ 08034.  Together, Jacobson and Duke hold 100% of the ownership interests in New Jersey Bare Feet Shoes.

## **FACTUAL ALLEGATIONS**

13.    Absent explicit indication to the contrary, each factual representation contained herein is based upon the Report and Plaintiff's best knowledge, information, and good-faith belief as of the date of this Complaint.

14.    Prior to the Petition Date, the Debtors were owned 49% by Uri Jacobson and 51% by Meir Duke (the "Owners").  Uri Jacobson is currently the sole owner of the Debtors

pursuant to an Assignment of Member Interest Agreement (the "Sale Agreement") executed post-petition on December 22, 2011 with an effective date of November 25, 2011.

15.     The Owners hold controlling interests in numerous third party entities, including each of the Related Entities that received transfers, before and after the Petition Date, from the Debtors without any benefit provided to the Debtors.

16.     Upon information and belief, one of both of the Owners dominate and control each of the Related Entities and have used the Related Entities to commit fraud upon the Debtor and the Debtors' creditors by accepting improper transfers from the Debtors.

17.     Upon information and belief, the Owners have failed to adhere to failure to adhere to corporate formalities with respect to the operations of the Related Entities, by among other things, engaging in the commingling of funds.

18.     At all times relevant to this Complaint, the Owners and Related Entities, were all "insiders" of the Debtors within the meaning of § 101(31)(B) of the Bankruptcy Code.

19.     Upon information and belief, and based on the Report, the Debtors made numerous transfers to the Defendants that were falsely recorded in the Debtors' books and records as payments related to undocumented notes or loans, or which were otherwise disguised as valid vendor transactions.

20.     During the two years prior to the Petition Date, the Debtors made transfers of their property to D&J in the total amount of at least $62,000.98 (the "D&J Pre-Petition Transfers").

21.     During the two years prior to the Petition Date, the Debtors made transfers of their property to Max in the total amount of at least $141,502.55 (the "Max Pre-Petition Transfers").

22.     During the two years prior to the Petition Date, the Debtors made transfers of their property to Green Guacamole in the total amount of at least $89,930.81 (the "Green Guacamole Pre-Petition Transfers").

23.     During the two years prior to the Petition Date, the Debtors made transfers of their property to BFS of Florida in the total amount of at least $115,050 (the "BFS of Florida Pre-Petition Transfers").

24.     During the two years prior to the Petition Date, the Debtors made transfers of their property to New Jersey Bare Feet Shoes in the total amount of at least $1,420,564.48 (the "New Jersey Bare Feet Shoes Pre-Petition Transfers").

25.     During the two years prior to the Petition Date, the Debtors made transfers of their property to or for the benefit of Jacobson in the total amount of at least $329,093.94 (the "Jacobson Pre-Petition Transfers").

26.     Upon information and belief, in addition to the Jacobson Pre-Petition Transfers, during the period from October 2009 through October 2011, the Debtors made certain purported loans to Jacobson totaling at least $381,489.54 (the "Jacobson Loans").

27.     Upon information and belief, despite due demand, Jacobson has not repaid the Jacobson Loans.

28.     During the two years prior to the Petition Date, the Debtors made transfers of their property to or for the benefit of Duke in the total amount of at least $258,455.71 (the "Duke Pre-Petition Transfers", and together with the D&J Pre-Petition Transfers, Max Pre-Petition Transfers, Green Guacamole Pre-Petition Transfers, BFS of Florida Pre-Petition Transfers, New Jersey Bare Feet Shoes Pre-Petition Transfers and Jacobson Pre-Petition Transfers the "Pre-Petition Transfers").

7

29.     Upon information and belief, in addition to the Duke Pre-Petition Transfers, during the period from September 2009 through November 2011, the Debtors made certain purported loans to Duke totaling at least $66,177.96 (the "Duke Loans").

30.     Upon information and belief, despite due demand, Duke has not repaid the Duke Loans.

31.     A list of all the transfers made to the Pre-Petition Transferees made to the Defendants within the two years prior to the Petition Date is annexed hereto as **Exhibit A**.

32.     Upon information and belief, similar additional transfers were made by the Debtors to the Defendants during periods prior to the date that is two years prior to the Petition Date and the Committee reserves all rights to amend this Complaint to seek avoidance of any such transfers upon discovery of sufficient information regarding same.

33.     Subsequent to the Petition Date, the Debtors made unauthorized transfers of their property to Green Guacamole in the total amount of at least $1,544.11 (the "Green Guacamole Post-Petition Transfers").

34.     Subsequent to the Petition Date, the Debtors made unauthorized transfers of their property to Duke in the total amount of at least $1,796 (the "Duke Post-Petition Transfers", and together with the Green Guacamole Post-Petition Transfers, the "Post-Petition Transfers".  The Post-Petition Transfers and the Pre-Petition Transfers are collectively referred to as the "Transfers").

35.     A summary of the Post-Petition Transfers is annexed hereto as **Exhibit B**.

36.     Upon information and belief, none of the Transfers benefited the Debtors but instead went to the Owners and/or the Related Entities to the detriment of the Debtors and their legitimate creditors.

8

37.    Upon information and belief and on the investigation performed by the Examiner and described more fully in the Report, the following is a list of conditions which exist:

a)  Lack of written corporate policies and standard operating conditions;

b)  Lack of interest in compliance with internal control policies, especially division of duties;

c)  Disorganized operations in areas of bookkeeping, cash management, and purchasing;

d)  Unrecorded transactions or missing records;

e)  Frequent or unusual Related Entity transactions;

f)  Corporate officers in close association with suppliers or creditors;

g)  Business assets dissipating without explanation;

h)  Little accountability for merchandise purchases; and

i)  No formal documentation process for the purchase of merchandise.

38.    Upon information and belief, prior to and following the Petition Date:

a)  Managers of the Debtors have disbursed the Debtors' funds to Insiders and recorded the disbursements as purchases of merchandise but no merchandise was received;

b)  Funds were disbursed by the Debtors to Insiders for incomplete shipments and the shipments were never completed;

c)  The Debtors experienced cash shortages and excessive actual purchases compared to budgeted purchases because of the lack of accountability;

d) Uri Jacobson paid himself payroll from the Debtors' cash registers without court approval;

e) Hundreds of thousands of dollars were distributed by the Debtors post-petition which were falsely recorded as merchandise purchases in the Debtors' QuickBooks to disguise the true nature of the transactions;

f) A criminal case was commenced by the United States of America against Uri Jacobson in the United State District Court for the Eastern District of Pennsylvania, Case No. 12-00276, based on the illegal activities surrounding the payroll system;

g) Numerous payments were made by the Debtors to third parties on behalf of or for the benefit of Insiders that were not included in the shareholder loan accounts on the Debtors' books, but were instead recorded as business expenses;

h) The Sale Agreement provides that Jacobson purchased Duke's 51% interest in the Debtors for $1,000,000, yet Jacobson was not able to provide evidence of a proper valuation of the Debtors;

i) The Debtors have paid pre-bankruptcy obligations during the post-petition period and such payments were falsely reported in the monthly operating reports as purchases of merchandise, utilities, and rent and not as reductions in pre-petition liabilities; and

j) The Debtors employees performed services for both the Debtors and the Related Entities, but received compensation only from the Debtors.

10

## COUNT ONE
**(Breach of Fiduciary Duty and Corporate Waste)**
**(Against Jacobson and Duke)**

39.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 38 of this Complaint as if fully set forth at length herein.

40.     Each of the Owners owed a fiduciary duty to the Debtor.  The Owners were required to (a) act with the care that an ordinarily prudent person in a like position would exercise under similar circumstances; (b) act in the best interests of the corporation; and (c) ensure that the Debtors' financial affairs were carefully managed.

41.     By reason of their fiduciary relationship, the Owners owed the Debtor the highest obligations of care, oversight, reasonably inquiry, supervision and informed decision making.

42.     Each of the Owners owed the duty of loyalty to the Debtors.  The duty of loyalty required, among other things, that the Owners not engage in self-dealing or otherwise use their position with the Debtors to further personal interests rather than those of the Debtors, and that the Owners act with the highest degree of honesty and loyalty toward the Debtors and in the best interests of the Debtors.

43.     The Owners breached their respective fiduciary duties by causing the Debtors to make certain Transfers, as set forth in annexed Schedules A and B, to the Owners and the Related Entities, which were owned either in part or in full by the Owners, and for which the Debtors did not receive reasonably equivalent value and/or or fair consideration, and in some instances received no consideration.

44.     The Transfers were disguised as loans or note repayments, but upon information and belief, no loan agreements or notes were issued by or to the Debtors in relation

11

to the Transfers.    The Debtors did not receive adequate consideration in exchange for the Transfers.

45.    The Transfers have not been repaid to the Debtors.

46.    The Owners breached their respective fiduciary duties, including the duties of loyalty and due care, to the Debtors, and their creditors, by directing and authorizing the Transfers for the sole benefit of the Owners and the Related Entities to the detriment of the Debtors.

47.    As the owners and officers of the Debtors and the owners and officers of the Related Entities, and in some cases as the direct recipients of the Transfers, the Owners were not disinterested in the Debtors' transactions with the Related Entities and thus are not entitled to the presumption afforded by the business judgment rule with respect to such transactions.

48.    The Owners breached their duty of loyalty to the Debtors by authorizing, directing and in some instances accepting the Transfers for their own benefit to the detriment of the Debtors.

49.    The Owners failed to act independently and to exercise honest judgment in the lawful and legitimate furtherance of the Debtors' corporate or business purposes.

50.    The Owners breached their duty of care to the Debtors by authorizing, directing and in some instances accepting the Transfers while the Debtors were insolvent or had insufficient capital to meet their obligations.

51.    As a direct and proximate result of the foregoing, the Debtors sustained significant damages in an amount to be determined at trial.

## COUNT TWO
### (Conversion)
### (Against Jacobson and Duke)

52.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 51 of this Complaint as if fully set forth at length herein.

53.    As the Owners of the Debtors, the Owners knowingly and intentionally permitted the Debtors to make the Transfers to the Owners and/or to the Related Entities for the Owners' benefit and for the Owners' personal gain and also failed to repay the Jacobson Loans and the Duke Loans.

54.    Such course of conduct resulted directly and proximately in substantial economic harm to the Debtors and their non-insider unsecured creditors.

55.    As a result of the foregoing, Plaintiff is entitled to a judgment against the Owners in an amount equal to the value of all such property improperly transferred, with such amount to be determined at trial.

## COUNT THREE
### (Constructively Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550))
### (Against Jacobson, Duke, D&J, Max, Green Guacamole, BFS of Florida, and New Jersey Bare Feet Shoes)

56.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 55 of this Complaint as if fully set forth at length herein.

57.    Each of the Pre-Petition Transfers was made to or for the benefit of the Insiders and/or Related Entities.

58.    The Pre-Petition Transfers made by the Debtors to the Pre-Petition Transferees were made within two (2) years of the Petition Date and are set forth on Exhibit A hereto.

13

59.    The Debtors received less than reasonably equivalent value in exchange for the Pre-Petition Transfers.

60.    At the time that they made each of the Pre-Petition Transfers, the Debtors: (i) were insolvent or became insolvent as a result of the Transfers; (ii) were engaged in business or a transaction, or were about to engage in business or a transaction, for which any property remaining with the Debtors was an unreasonably small capital; and/or (iii) intended to incur, or believed that the Debtors would incur debts that would be beyond the Debtors' ability to pay as such debts matured.

61.    To the extent any Defendant was not an initial transferee of the Pre-Petition Transfers, it was an immediate or mediate transferee of the initial transferee(s) of the Pre-Petition Transfers, and did not take the Pre-Petition Transfers for value or in good faith or without knowledge of the voidability of the Pre-Petition Transfers.

62.    Based upon the foregoing, the Plaintiff may avoid each of the Pre-Petition Transfers listed on Exhibit A as well as any later discovered Pre-Petition Transfers.

63.    Pursuant to section 550(a) of the Bankruptcy Code, Plaintiff is entitled to recover the value of all such avoided Pre-Petition Transfers.

64.    As a result of the foregoing, pursuant to Bankruptcy Code §§ 548(a)(1)(B), 550(a), and 551, Plaintiff is entitled to judgment as follows:

a) against D&J (a) avoiding and preserving the D&J Pre-Petition Transfers, (b) directing that the D&J Pre-Petition Transfers be set aside, and (c) recovering the D&J Pre-Petition Transfers from D&J for the benefit of the estates of the Debtors;

b) against Max (a) avoiding and preserving the Max Pre-Petition Transfers, (b) directing that the Max Pre-Petition Transfers be set aside, and (c) recovering the Max Pre-Petition Transfers from Max for the benefit of the estates of the Debtors;

c) against Green Guacamole (a) avoiding and preserving the Green Guacamole Pre-Petition Transfers, (b) directing that the Green Guacamole Pre-Petition Transfers be set aside, and (c) recovering the Green Guacamole Pre-Petition Transfers from Green Guacamole for the benefit of the estates of the Debtors;

d) against BFS of Florida (a) avoiding and preserving the BFS of Florida Pre-Petition Transfers, (b) directing that the BFS of Florida Pre-Petition Transfers be set aside, and (c) recovering the BFS of Florida Pre-Petition Transfers from BFS of Florida for the benefit of the estates of the Debtors;

e) against New Jersey Bare Feet Shoes (a) avoiding and preserving the New Jersey Bare Feet Shoes Pre-Petition Transfers, (b) directing that the New Jersey Bare Feet Shoes Pre-Petition Transfers be set aside, and (c) recovering the New Jersey Bare Feet Shoes Pre-Petition Transfers from New Jersey Bare Feet Shoes for the benefit of the estates of the Debtors;

f) against Jacobson (a) avoiding and preserving the Jacobson Pre-Petition Transfers, (b) directing that the Jacobson Pre-Petition Transfers be set aside, and (c) recovering the Jacobson Pre-Petition Transfers from Jacobson for the benefit of the estates of the Debtors;

15

g) against Duke (a) avoiding and preserving the Duke Pre-Petition Transfers, (b) directing that the Duke Pre-Petition Transfers be set aside, and (c) recovering the Duke Pre-Petition Transfers from Duke for the benefit of the estates of the Debtors.

65.    Unless and until such judgment is paid in full, any claims asserted by Defendants against the Debtors should be disallowed to the extent of said judgment, as provided by § 502(d) of the Bankruptcy Code.

66.    In accordance with Bankruptcy Rule 3007(b), Plaintiff intends for this cause of action to be considered an objection to any and all of Defendants' claim(s) in this Bankruptcy Case.

## COUNT FOUR
**(Intentionally Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550)**
**(Against Jacobson, Duke, D&J, Max, Green Guacamole, BFS of Florida, and New Jersey Bare Feet Shoes)**

67.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 66 of this Complaint as if fully set forth at length herein.

68.    Each of the Pre-Petition Transfers was a transfer of an interest of the Debtor and was made to or for the benefit of the Insiders or Related Entities.

69.    The Pre-Petition Transfers were made within two (2) years of the Petition Date.

70.    The Debtors made each Pre-Petition Transfer with the actual intent to hinder, delay, and/or defraud entities to which the Debtors were or became indebted:

a) In making the Pre-Petition Transfers, the Debtors intentionally channeled to Defendants monies that would have otherwise remained available for the satisfaction of debts to non-insider creditors—i.e., each

Pre-Petition Transfer diminished dollar-for-dollar the value of the remaining assets available to satisfy non-insider creditors.

b) By intentionally depleting assets, the Debtors defrauded non-insider creditors by hindering and delaying their ability to collect on their debts.

71.    Thus, Plaintiff may avoid each of the Pre-Petition Transfers pursuant to section 548(a)(1)(A) of the Bankruptcy Code.

72.    Pursuant to section 550 of the Bankruptcy Code, Plaintiff is entitled to recover the aggregate value of the Pre-Petition Transfers.

73.    As a result of the foregoing, pursuant to Bankruptcy Code §§ 548(a)(1)(A), 550(a), and 551, Plaintiff is entitled to a judgment:

a) against D&J (a) avoiding and preserving the D&J Pre-Petition Transfers, (b) directing that the D&J Pre-Petition Transfers be set aside, and (c) recovering the D&J Pre-Petition Transfers from D&J for the benefit of the estates of the Debtors;

b) against Max (a) avoiding and preserving the Max Pre-Petition Transfers, (b) directing that the Max Pre-Petition Transfers be set aside, and (c) recovering the Max Pre-Petition Transfers from Max for the benefit of the estates of the Debtors;

c) against Green Guacamole (a) avoiding and preserving the Green Guacamole Pre-Petition Transfers, (b) directing that the Green Guacamole Pre-Petition Transfers be set aside, and (c) recovering the Green Guacamole Pre-Petition Transfers from Green Guacamole for the benefit of the estates of the Debtors;

d) against BFS of Florida (a) avoiding and preserving the BFS of Florida Pre-Petition Transfers, (b) directing that the BFS of Florida Pre-Petition Transfers be set aside, and (c) recovering the BFS of Florida Pre-Petition Transfers from BFS of Florida for the benefit of the estates of the Debtors;

e) against New Jersey Bare Feet Shoes (a) avoiding and preserving the New Jersey Bare Feet Shoes Pre-Petition Transfers, (b) directing that the New Jersey Bare Feet Shoes Pre-Petition Transfers be set aside, and (c) recovering the New Jersey Bare Feet Shoes Pre-Petition Transfers from New Jersey Bare Feet Shoes for the benefit of the estates of the Debtors;

f) against Jacobson (a) avoiding and preserving the Jacobson Pre-Petition Transfers, (b) directing that the Jacobson Pre-Petition Transfers be set aside, and (c) recovering the Jacobson Pre-Petition Transfers from Jacobson for the benefit of the estates of the Debtors;

g) against Duke (a) avoiding and preserving the Duke Pre-Petition Transfers, (b) directing that the Duke Pre-Petition Transfers be set aside, and (c) recovering the Duke Pre-Petition Transfers from Duke for the benefit of the estates of the Debtors.

74.    Unless and until such judgment is paid in full, any claims asserted by Defendants against the Debtors should be disallowed to the extent of said judgment, as provided by § 502(d) of the Bankruptcy Code.

75.     In accordance with Bankruptcy Rule 3007(b), Plaintiff intends for this cause of action to be considered an objection to any and all of Defendants' claim(s) in this Bankruptcy Case.

## COUNT FIVE
**(Intentionally Fraudulent Transfer Pursuant to 12 Pa. C.S.A. §§ 5104(a)(1), 5106, 5107 and 5108 and Bankruptcy Code §§ 544, 550(a), 551, and 1107)**
**(Against Jacobson, Duke, Max, Green Guacamole, BFS of Florida, and New Jersey Bare Feet Shoes)**

76.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 75 above as if fully set forth herein at length.

77.     At all relevant times, there was and is at least one or more creditors who held and hold unsecured claims against the Debtors that were and are allowable under Bankruptcy Code § 502 or that were and are not allowable only under Bankruptcy Code § 502(e).

78.     The Pre-Petition Transfers were made the Debtors with the actual intent to hinder, delay, or defraud the creditors of the Debtors.

79.     As a result of the foregoing, pursuant to 12 Pa. C.S.A. §§ 5104(a)(1), 5106, 5107 and 5108, and Bankruptcy Code §§ 544(b), 550(a), and 551, Plaintiff is entitled to a judgment:

a)   against D&J (a) avoiding and preserving the D&J Pre-Petition Transfers, (b) directing that the D&J Pre-Petition Transfers be set aside, and (c) recovering the D&J Pre-Petition Transfers from D&J for the benefit of the estates of the Debtors;

b)   against Max (a) avoiding and preserving the Max Pre-Petition Transfers, (b) directing that the Max Pre-Petition Transfers be set aside, and (c)

recovering the Max Pre-Petition Transfers from Max for the benefit of the estates of the Debtors;

c) against Green Guacamole (a) avoiding and preserving the Green Guacamole Pre-Petition Transfers, (b) directing that the Green Guacamole Pre-Petition Transfers be set aside, and (c) recovering the Green Guacamole Pre-Petition Transfers from Green Guacamole for the benefit of the estates of the Debtors;

d) against BFS of Florida (a) avoiding and preserving the BFS of Florida Pre-Petition Transfers, (b) directing that the BFS of Florida Pre-Petition Transfers be set aside, and (c) recovering the BFS of Florida Pre-Petition Transfers from BFS of Florida for the benefit of the estates of the Debtors;

e) against New Jersey Bare Feet Shoes (a) avoiding and preserving the New Jersey Bare Feet Shoes Pre-Petition Transfers, (b) directing that the New Jersey Bare Feet Shoes Pre-Petition Transfers be set aside, and (c) recovering the New Jersey Bare Feet Shoes Pre-Petition Transfers from New Jersey Bare Feet Shoes for the benefit of the estates of the Debtors;

f) against Jacobson (a) avoiding and preserving the Jacobson Pre-Petition Transfers, (b) directing that the Jacobson Pre-Petition Transfers be set aside, and (c) recovering the Jacobson Pre-Petition Transfers from Jacobson for the benefit of the estates of the Debtors;

g) against Duke (a) avoiding and preserving the Duke Pre-Petition Transfers, (b) directing that the Duke Pre-Petition Transfers be set aside,

and (c) recovering the Duke Pre-Petition Transfers from Duke for the benefit of the estates of the Debtors.

### COUNT SIX
**(Constructively Fraudulent Transfer Pursuant to 12 Pa. C.S.A. §§ 5104(a)(2), 5106, 5107 and 5108 and Bankruptcy Code §§ 544, 550(a), 551, and 1107)**
**(Against Jacobson, Duke, D&J, Max, Green Guacamole, BFS of Florida, and New Jersey Bare Feet Shoes)**

80.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 79 above as if fully set forth herein at length.

81.    At all relevant times there was and is at least one or more creditors who held and hold unsecured claims against the Debtors that were and are allowable under Bankruptcy Code § 502 or that were and are not allowable only under Bankruptcy Code § 502(e).

82.    The Debtors did not receive reasonably equivalent value for the Pre-Petition Transfers.

83.    At the time that they made each of the Pre-Petition Transfers, the Debtors: (i) were engaged in business or a transaction, or were about to engage in business or a transaction, for which the remaining assets of the Debtors was unreasonably small capital in relation to the business or transaction; and/or (ii) intended to incur, or believed or reasonably should have believed that the Debtors would incur debts that would be beyond the Debtors' ability to pay as such debts became due.

84.    As a result of the foregoing, pursuant to 12 Pa. C.S.A. §§ 5104(a)(2), 5106, 5107 and 5108, and Bankruptcy Code §§ 544(b), 550 and 551, Plaintiff is entitled to a judgment:

21

a) against D&J (a) avoiding and preserving the D&J Pre-Petition Transfers, (b) directing that the D&J Pre-Petition Transfers be set aside, and (c) recovering the D&J Pre-Petition Transfers from D&J for the benefit of the estates of the Debtors;

b) against Max (a) avoiding and preserving the Max Pre-Petition Transfers, (b) directing that the Max Pre-Petition Transfers be set aside, and (c) recovering the Max Pre-Petition Transfers from Max for the benefit of the estates of the Debtors;

c) against Green Guacamole (a) avoiding and preserving the Green Guacamole Pre-Petition Transfers, (b) directing that the Green Guacamole Pre-Petition Transfers be set aside, and (c) recovering the Green Guacamole Pre-Petition Transfers from Green Guacamole for the benefit of the estates of the Debtors;

d) against BFS of Florida (a) avoiding and preserving the BFS of Florida Pre-Petition Transfers, (b) directing that the BFS of Florida Pre-Petition Transfers be set aside, and (c) recovering the BFS of Florida Pre-Petition Transfers from BFS of Florida for the benefit of the estates of the Debtors;

e) against New Jersey Bare Feet Shoes (a) avoiding and preserving the New Jersey Bare Feet Shoes Pre-Petition Transfers, (b) directing that the New Jersey Bare Feet Shoes Pre-Petition Transfers be set aside, and (c) recovering the New Jersey Bare Feet Shoes Pre-Petition Transfers from New Jersey Bare Feet Shoes for the benefit of the estates of the Debtors;

f) against Jacobson (a) avoiding and preserving the Jacobson Pre-Petition Transfers, (b) directing that the Jacobson Pre-Petition Transfers be set aside, and (c) recovering the Jacobson Pre-Petition Transfers from Jacobson for the benefit of the estates of the Debtors;

g) against Duke (a) avoiding and preserving the Duke Pre-Petition Transfers, (b) directing that the Duke Pre-Petition Transfers be set aside, and (c) recovering the Duke Pre-Petition Transfers from Duke for the benefit of the estates of the Debtors.

**<u>COUNT SEVEN</u>**
**(Constructively Fraudulent Transfer Pursuant to 12 Pa. C.S.A. §§ 5105, 5106, 5107 and 5108 and Bankruptcy Code §§ 544, 550(a), 551, and 1107)**
**(Against Jacobson, Duke, D&J, Max, Green Guacamole, BFS of Florida, and New Jersey Bare Feet Shoes)**

85.　　Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 84 above as if fully set forth herein at length.

86.　　At all relevant times there was and is at least one or more creditors who held and hold unsecured claims against the Debtors that were and are allowable under Bankruptcy Code § 502 or that were and are not allowable only under Bankruptcy Code § 502(e).

87.　　The Debtors did not receive reasonably equivalent value for the Pre-Petition Transfers.

88.　　At the time the Debtors made the Pre-Petition Transfers, the Debtors were insolvent or the Debtors became insolvent as a result of the Pre-Petition Transfers.

89.     As a result of the foregoing, pursuant to 12 Pa. C.S.A. §§ 5105, 5106, 5107 and 5108, and Bankruptcy Code §§ 544(b), 550(a), and 551, Plaintiff is entitled to a judgment:

a) against D&J (a) avoiding and preserving the D&J Pre-Petition Transfers, (b) directing that the D&J Pre-Petition Transfers be set aside, and (c) recovering the D&J Pre-Petition Transfers from D&J for the benefit of the estates of the Debtors;

b) against Max (a) avoiding and preserving the Max Pre-Petition Transfers, (b) directing that the Max Pre-Petition Transfers be set aside, and (c) recovering the Max Pre-Petition Transfers from Max for the benefit of the estates of the Debtors;

c) against Green Guacamole (a) avoiding and preserving the Green Guacamole Pre-Petition Transfers, (b) directing that the Green Guacamole Pre-Petition Transfers be set aside, and (c) recovering the Green Guacamole Pre-Petition Transfers from Green Guacamole for the benefit of the estates of the Debtors;

d) against BFS of Florida (a) avoiding and preserving the BFS of Florida Pre-Petition Transfers, (b) directing that the BFS of Florida Pre-Petition Transfers be set aside, and (c) recovering the BFS of Florida Pre-Petition Transfers from BFS of Florida for the benefit of the estates of the Debtors;

e) against New Jersey Bare Feet Shoes (a) avoiding and preserving the New Jersey Bare Feet Shoes Pre-Petition Transfers, (b) directing that the

New Jersey Bare Feet Shoes Pre-Petition Transfers be set aside, and (c) recovering the New Jersey Bare Feet Shoes Pre-Petition Transfers from New Jersey Bare Feet Shoes for the benefit of the estates of the Debtors;

f) against Jacobson (a) avoiding and preserving the Jacobson Pre-Petition Transfers, (b) directing that the Jacobson Pre-Petition Transfers be set aside, and (c) recovering the Jacobson Pre-Petition Transfers from Jacobson for the benefit of the estates of the Debtors;

g) against Duke (a) avoiding and preserving the Duke Pre-Petition Transfers, (b) directing that the Duke Pre-Petition Transfers be set aside, and (c) recovering the Duke Pre-Petition Transfers from Duke for the benefit of the estates of the Debtors.

## COUNT EIGHT
### (Preferential Transfer – 11 U.S.C. §§ 547(b) and 550)
### (Against the One- Year Transferees)

90.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 89 of this Complaint as if fully set forth at length herein.

91.     Each of the transfers detailed in the chart annexed hereto as **Exhibit C** (the "One-Year Transfers"), was a transfer to an Insider ("One Year Transferees") of an interest of the Debtors in property.

92.     To the extent that the One Year Transferees were creditors of the Debtors, each of the One-Year Transfers was made on account of an antecedent debt.

93.     The One-Year Transfers were made while the Debtors were insolvent.

25

94.     At the time the One Year Transferees received the One-Year Transfers, the One Year Transferees were insiders of the Debtors due to their special relationship with the Debtors.

95.     The One-Year Cash Transfers were made within one (1) year of the Petition Date.

96.     As a result of the One-Year Transfers, the One Year Transferees received more than they would have received if (i) the Debtors' case were a case under chapter 7 of the Bankruptcy Code, (ii) the One-Year Transfers had not been made; and (iii) the One Year Transferees received payment on account of their claims against the Debtors to the extent provided under the Bankruptcy Code.

97.     Thus, pursuant to § 547(b) of the Bankruptcy Code, to the extent One Year Transferees were creditors of the Debtors, Plaintiff may avoid the One-Year Transfers.

98.     Pursuant to § 550 of the Bankruptcy Code, Plaintiff is entitled to recover the value of all such avoided One-Year Transfers from the Defendants.

99.     As a result of the foregoing, pursuant to Bankruptcy Code §§ 547, 550(a), and 551 Plaintiff is entitled to a judgment (a) avoiding and preserving the respective One Year Transfers, (b) directing that the respective One Year Transfers be set aside, and (c) recovering the respective One Year Transfers from any of the Defendants who received a One Year Transfer, for the benefit of the estates of the Debtors.

100.     Unless and until such judgment is paid in full, then pursuant to § 502(d) of the Bankruptcy Code, any claims asserted by One Year Transferees  against the Debtor should be disallowed to the extent of such judgment.

101.     In accordance with Bankruptcy Rule 3007(b), this cause of action is

intended to be considered a pending objection to any and all One-Year Transferees' claim(s), if any, in this Bankruptcy Case.

## COUNT NINE
### (Post-Petition Transfers – 11 U.S.C. §§ 549(a) and 550(a))
### (Against Green Guacamole and Duke)

102.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 101 of this Complaint as if fully set forth at length herein.

103.    The property transferred in relation to the Post-Petition Transfers constituted property of the Debtors' estate pursuant to section 541(a) of the Bankruptcy Code.

104.    The Post-Petition Transfers were made after the Petition Date.

105.    The Post-Petition Transfers were not authorized by the Debtors.

106.    The Post-Petition Transfers were not authorized under the Bankruptcy Code or by the Bankruptcy Court.

107.    The transferees of the Post-Petition Transfers did not provide any value to the Debtors after the Petition Date on account of the Post-Petition Transfers.

108.    Pursuant to sections 549(a) and 550(a) of the Bankruptcy Code, respectively, Plaintiff is entitled to a judgment:

a) Against Green Guacamole avoiding and preserving the Green Guacamole Post-Petition Transfers, (b) directing that the Green Guacamole Post-Petition Transfers be set aside, and (c) recovering the Green Guacamole Post-Petition Transfers from Green Guacamole for the benefit of the estates of the Debtors.

b) Against Duke avoiding and preserving the Duke Post-Petition Transfers, (b) directing that the Duke Post-Petition Transfers be set aside, and (c)

recovering the Duke Post-Petition Transfers from Duke for the benefit of

the estates of the Debtors

## COUNT TEN
**(Alter Ego Liability Against Duke in Relation to Max and BFS of Florida)**

109.    Plaintiff repeats and re-alleges each and every allegation set forth in

paragraphs 1 through 108 of this Complaint as if fully set forth at length herein.

110.    Duke holds a 100% ownership interest in Max and BFS of Florida.

111.    Upon information and belief, Duke totally dominates and controls Max

and BFS of Florida.

112.    Upon information and belief, Duke has failed to adhere to failure to adhere

to corporate formalities with respect to the operations of Max and BFS of Florida, by among

other things commingling funds and engaging in informal transfers of funds.

113.    Upon information and belief, Duke has abused the corporate form of Max

and BFS of Florida by using those entities to accept fraudulent transfers from the Debtors for his

own benefit in an effort to commit fraud upon the Debtors and their creditors.

114.    Based upon the foregoing, Duke is liable to the Debtors for the debts of

Max and BFS of Florida because those entities are his mere alter-ego.

## COUNT ELEVEN
**(Alter Ego Liability Against Jacobson in Relation to Green Guacamole)**

115.    Plaintiff repeats and re-alleges each and every allegation set forth in

paragraphs 1 through 114 of this Complaint as if fully set forth at length herein.

116.    Jacobson holds a 100% ownership interest in Green Guacamole.

117.    Upon information and belief, Jacobson totally dominates and controls

Green Guacamole.

118.    Upon information and belief, Jacobson has failed to adhere to failure to adhere to corporate formalities with respect to the operations of Green Guacamole, by among other things commingling funds and engaging in informal transfers of funds.

119.    Upon information and belief, Jacobson has abused the corporate form of Green Guacamole by using those entities to accept fraudulent transfers from the Debtors for his own benefit in an effort to commit fraud upon the Debtors and their creditors.

120.    Based upon the foregoing, Jacobson is liable to the Debtors for the debts of Green Guacamole because that entity is his mere alter-ego.

## COUNT TWELVE
**(Alter Ego Liability Jointly Against Jacobson and Duke in Relation
to D&J and New Jersey Bare Feet Shoes)**

121.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 120 of this Complaint as if fully set forth at length herein.

122.    Jacobson and Duke hold 100% of the ownership interest in D&J and New Jersey Bare Feet Shoes.

123.    Upon information and belief, together Jacobson and Duke totally dominate and control D&J and New Jersey Bare Feet Shoes.

124.    Upon information and belief, Jacobson and Duke have failed to adhere to failure to adhere to corporate formalities with respect to the operations of D&J and New Jersey Bare Feet Shoes, by among other things commingling funds and engaging in informal transfers of funds.

125.    Upon information and belief, Jacobson and Duke have abused the corporate form of D&J and New Jersey Bare Feet Shoes by using those entities to accept

fraudulent transfers from the Debtors for their own benefit in an effort to commit fraud upon the Debtors and their creditors.

126.     Based upon the foregoing, Jacobson and Duke are liable to the Debtors for the debts of D&J and New Jersey Bare Feet Shoes because those entities are their mere alter-egos.

### COUNT THIRTEEN
**(Breach of Contract)**
**(Against Jacobson)**

127.     Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 126 of this Complaint as if fully set forth at length herein.

128.     Upon information and belief, the Debtors advanced at least $381,489.54 to Jacobson in a series of purported loans.

129.     Upon information and belief, Jacobson agreed to repay the Jacobson Loan upon due demand.

130.     Upon information and belief, the Debtors have demanded payment in full from Jacobson of the Jacobson Loans.

131.     Jacobson has failed and refused to repay the Jacobson Loans.

132.     Jacobson's failure and refusal to repay the amount due constitutes a breach of contract for which Jacobson is liable.

133.     As a result of his breach, Jacobson is liable to Plaintiff in the amount of at least $381,489.54, plus interest thereon.

134.     By reason of the foregoing, the Debtors have been damaged in the amount of not less than $381,489.54, together with interest thereon.

## COUNT FOURTEEN
### (Unjust Enrichment)
### (Against Jacobson)

135.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 134 of this Complaint as if fully set forth at length herein.

136.   Jacobson has not repaid the funds due and owing to the Debtors in relation to the Jacobson Loans, and yet has he has enjoyed the benefit of the use of those funds.

137.   The use of the funds without payment to the Debtors constitutes an unjust enrichment of Jacobson at the Debtors' expense.

138.   As a result of the unjust enrichment of Jacobson, the Debtors have been damaged in an amount not less than $381,489.54, together with interest thereon.

## COUNT FIFTEEN
### (Breach of Contract)
### (Against Duke)

139.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 138 of this Complaint as if fully set forth at length herein.

140.   Upon information and belief, the Debtors advanced at least $66,177.96 to Duke in a series of purported loans.

141.   Upon information and belief, Duke agreed to repay the Duke Loan upon due demand.

142.   Upon information and belief, the Debtors have demanded payment in full from Duke of the Duke Loans.

143.   Duke has failed and refused to repay the Duke Loans.

144.   Duke's failure and refusal to repay the amount due constitutes a breach of contract for which Duke is liable.

145.    As a result of his breach, Duke is liable to Plaintiff in the amount of at least $66,177.96, plus interest thereon.

146.    By reason of the foregoing, the Debtors have been damaged in the amount of not less than $66,177.96, together with interest thereon.

### COUNT SIXTEEN
### (Unjust Enrichment)
### (Against Duke)

147.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 146 of this Complaint as if fully set forth at length herein.

148.    Duke has not repaid the funds due and owing to the Debtors in relation to the Duke Loans, and yet has he has enjoyed the benefit of the use of those funds.

149.    The use of the funds without payment to the Debtors constitutes an unjust enrichment of Duke at the Debtors' expense.

150.    As a result of the unjust enrichment of Duke, the Debtors have been damaged in an amount not less than $66,177.96, together with interest thereon.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against the Defendants as follows:

a) On Count One, against the Owners on account of their breaches of fiduciary duties of loyalty and care, holding each jointly and severally liability for actual and compensatory damages in an amount to be determined at trial but estimated to be not less than the amount of the Transfers, plus punitive damages in an amount to restore the Debtors creditors to the place they were prior to providing money, goods, or services to the Debtors;

b) On Count Two, against the Owners in the total amount of all property wrongfully converted as determined by the Court;

c) On Count Three, pursuant to Bankruptcy Code §§ 548(a)(1)(B), 550(a) and 551: (a) avoiding and preserving the Pre-Petition Transfers, (b) directing that the Pre-Petition Transfers be set aside, and (c) recovering the respective Pre-Petition Transfers from the Defendants for the benefit of the estates of the Debtors;

d) On Count Four, pursuant to Bankruptcy Code §§ 548(a)(1)(A), 550(a), and 551: (a) avoiding and preserving the respective Pre-Petition Transfers, (b) directing that the respective Pre-Petition Transfers be set aside, and (c) recovering the respective Pre-Petition Transfers from the Defendants for the benefit of the estates of the Debtors;

e) On Count Five, pursuant to pursuant to 12 Pa. C.S.A. §§ 5104(a)(1), 5106, 5107 and 5108, and Bankruptcy Code §§ 544(b), 550(a), and 551:  (a) avoiding and preserving the respective Pre-Petition Transfers, (b) directing that the respective Pre-Petition Transfers be set aside, and (c) recovering the respective Pre-Petition Transfers from the Defendants for the benefit of the estates of the Debtors;

f) On Count Six, pursuant to pursuant to 12 Pa. C.S.A. §§ 5104(a)(2), 5106, 5107 and 5108, and Bankruptcy Code §§ 544(b), 550 and 551:  (a) avoiding and preserving the respective Pre-Petition Transfers, (b) directing that the respective Pre-Petition Transfers be set aside, and (c) recovering the respective Pre-Petition Transfers from the Defendants for the benefit of the estates of the Debtors;

g) On Count Seven, pursuant to 12 Pa. C.S.A. §§ 5105, 5106, 5107 and 5108, and Bankruptcy Code §§ 544(b), 550(a), and 551: (a) avoiding and preserving the respective Pre-Petition Transfers, (b) directing that the respective Pre-Petition Transfers be set aside,

and (c) recovering the respective Pre-Petition Transfers from the Defendants for the benefit of the estates of the Debtors;

h)  On Count Eight, pursuant to Bankruptcy Code §§ 547, 550(a), and 551: (a) avoiding and preserving the respective One Year Transfers, (b) directing that the respective One Year Transfers be set aside, and (c) recovering the respective One Year Transfers from the Defendants for the benefit of the estates of the Debtors;

i)  On Count Nine, pursuant to sections 549(a) and 550(a) of the Bankruptcy Code, respectively: (a) avoiding and preserving the respective Post-Petition Transfers, (b) directing that the respective Post-Petition Transfers be set aside, and (c) recovering the respective Post-Petition Transfers from Green Guacamole and Duke for the benefit of the estates of the Debtors;

j)  On Count Ten, against Duke as the alter-ego of Max and BFS of Florida;

k)  On Count Eleven, against Jacobson as the alter-ego of Green Guacamole;

l)  On Count Twelve, against Jacobson and Duke as the alter-ego of D&J and New Jersey Bare Feet Shoes;

m)  On Counts Thirteen and Fourteen, against, Jacobson, in the amount of at least $381,489.54, plus interest;

n)  On Counts Fifteen and Sixteen, against Duke, in the amount of at least $66,177.96, plus interest;

o)  Awarding Plaintiff all applicable interest, costs, and disbursements of this action;

p)  Pursuant to Bankruptcy Code § 502(d), disallowing any and all claims of the Defendants unless such Defendant has repaid the Transfers to the estates of the Debtors; and

q)  Granting Plaintiff such other, further, and different relief as the Court deems just, proper,

and equitable.

Dated:   New York, New York
        May 2, 2014

                                    **KLESTADT & WINTERS, LLP**


                              By:   */s/ Sean C. Southard*
                                    _____
                                    Sean C. Southard
                                    Brendan M. Scott
                                    570 Seventh Avenue, 17th Floor
                                    New York, NY 10018
                                    Tel: (212) 972-3000
                                    Fax: (212) 972-2245
                                    Email: ssouthard@klestadt.com
                                           bscott@klestadt.com

                                    *Counsel to the Committee*